IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| KENNETH S. BOYD, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:21-cv-1004-G (BT) |
| | § | |
| BUREAU OF PRISONS, ET AL. | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff Kenneth S. Boyd is a federal inmate proceeding *pro se* and *in forma pauperis* in this civil rights action. *See* ECF No. 10. In an amended complaint, he alleges that officials at FCI-Seagoville refused to let him visit with his daughter and then revoked his ability to communicate with her. *See* ECF No. 8 at 4. Pursuant to its screening obligations under 28 U.S.C. §§ 1915A and 1915(e)(2)(B), the Court should dismiss Boyd's claims for failure to state a claim upon which relief can be granted.

**Background**

Boyd originally brought this action against the Bureau of Prisons (BOP), claiming that the agency improperly removed his daughter from his visitation list. *See generally* ECF No. 3. Boyd filed an amended complaint that substitutes individual officers of the BOP as defendants in place of the BOP and claims that the defendants, in addition to refusing to allow his daughter to visit him, revoked

all his communication "privileges" with her. ECF No. 8.[1] Boyd also responded to a Magistrate Judge Questionnaire (MJQ) to further clarify his claims. Liberally construing all these pleadings, Boyd alleges as follows:

Boyd's daughter was omitted from his approved visitation list pursuant to BOP Program Statement 5324.10, which relates to sex offender management programs (SOMP). ECF No. 12 at 6, 8.[2] She was left off the approved visitor list

---

[1] Boyd refers to his ability to visit with his daughter as a "right" and his ability to communicate with her by other means as a "privilege." ECF No. 8 at 6. For convenience, this FCR adopts that phraseology.

[2] In relevant part, the statement provides that "[i]nmates may be restricted from visiting members of the general public who are:

- Prior child or adult victims of sexual offenses committed by the inmate.

- Children who are being groomed by the inmate for sexual assault or other predatory behavior involving children and/or caregivers of those children.

- Children who will not be adequately supervised by an accompanying adult.

- Any other visitors deemed inappropriate by the SOMP Coordinator due to the inmate's risk to engage in sexually offensive behavior."

Bureau of Prisons. (2013). Sex Offender Programs Program Statement PS5324.10 § 4.6.2

The statement also provides that "[i]nmates may be restricted from corresponding and/or communicating telephonically or electronically with individuals who are:

- Prior child or adult victims of sexual offenses committed by the inmate.

- Children who are being groomed by the inmate for sexual assault or other predatory behavior involving children and/or the caregivers of those children.

because Defendant M. Nelson felt that she was a victim of Boyd's crime, which Boyd disputes. ECF No. 12 at 6. Defendant Dr. Paulson was the acting SOMP coordinator at the time Boyd was denied visitation rights with his daughter. ECF No. 12 at 8.

Boyd submitted a "request to staff form" to M. Nelson, along with a letter from his attorney. ECF No. 8 at 6. The request sought to add Boyd's daughter to his approved visitor list, and the letter mentioned that a social services agency cleared Boyd of any misconduct in relation to his daughter. *See* ECF No. 3 at 30. Dr. Paulson denied the request after M. Nelson "supposedly supplied all information" to him for review and opinion. ECF No. 8 at 6.

Boyd appealed that denial to M. Nelson. ECF No. 8 at 6. The appeal was accompanied by a letter from "Blair County Children, Youth & Families" stating that "no records are available [regarding apparent allegations that Boyd engaged in inappropriate conduct with his daughter] as records of unsubstantiated allegations are expunged," thus tending to confirm Boyd's argument that his daughter was not a victim of his crime. ECF No. 8 at 6. This information was also shared with Defendant F. Tavarez. ECF No. 8 at 6. Nevertheless, the appeal was

---

- Other sexual offenders.

- Any other contact with the general public deemed inappropriate by the SOMP Coordinator due to its association with the inmate's risk to engage in sexually offensive behavior."

*Id.* at § 4.6.3

denied. ECF No. 8 at 6. Boyd submitted a further appeal to M. Nelson. ECF No. 8 at 7. The "relative documents" related to the appeal were supposedly shared with Defendant Zook, but Zook still denied the appeal. ECF No. 8 at 7.

Boyd submitted a further appeal, as well as all related paperwork, to the Grand Prairie Regional Office. ECF No. 8 at 7. Defendant Baltazar, a Regional Director of the BOP, denied the appeal. ECF No. 8 at 7. Boyd then submitted a final appeal, along with all related paperwork, to "Central Offices." ECF No. 8 at 7. Defendant Connors, the National Inmate Appeals Administrator, denied the appeal in March 2021. ECF No. 8 at 7.

After completing the administrative appeal process, Boyd visited with Dr. Paulson about reviewing evidence that "proved [his] innocence." ECF No. 12 at 6. This included another letter from Boyd's attorney stating that Boyd's daughter was not a victim of his crime. ECF No. 12 at 8. Dr. Paulson asked Boyd to hold off on filing a lawsuit, and Boyd waited for a few weeks before filing this suit. ECF No. 12 at 6.

Boyd filed his original complaint in May 2021. ECF No. 3. Thereafter, Boyd was advised that all forms of communication with his daughter would be revoked, and it would remain that way for the duration of his incarceration. ECF No. 12 at 6. His communication privileges with his daughter were revoked for "answering a question [his] daughter asked" about whether he used to be a swinger. ECF No. 12 at 7. He informed his daughter that he used to be a swinger, and "psychology" seized on that conversation to revoke his communication privileges. ECF No. 12 at

7. In June 2021, Boyd filed an amended complaint against the individual defendants who he claims had roles in terminating his ability to visit and communicate with his daughter. ECF No. 8.

According to Boyd, the BOP's decision to revoke his communication privileges with his daughter is not rationally related to any legitimate penological or general safety concerns. ECF No. 12 at 7. Further, Boyd made the supposedly inappropriate statement to his daughter five months before his communication privileges were revoked, which, coupled with the fact that the communication privileges were revoked only after he filed this suit, shows that the defendants revoked his communication privileges in retaliation for filing this suit. ECF No. 12 at 8.

However, four months after the communication privileges were revoked, Boyd was given back his e-mail privileges and told that if his e-mail messages with his daughter were appropriate, "they would look into giving [him] back telephone communication." ECF No. 12 at 5, 7.

And later, in April 2022, Boyd was "awarded visitation" with his daughter. ECF No. 12 at 3. He had two visits with her in in April 2022 and "[f]uture visits will be scheduled after June 13, 2022, when FCI Seagoville re-opens and the visitation becomes contact again." ECF No. 12 at 3.

As for relief, Boyd seeks an order approving visitation rights with his daughter; an order re-instating all e-mail, phone, and mail privileges; an award of court costs; an order requiring that some of the defendants be demoted or

retrained; and monetary damages for emotional and financial distress. ECF No. 8 at 6; ECF No. 12 at 6-16.

### Legal Standards

Boyd's complaint is subject to preliminary screening under 28 U.S.C. § 1915A. that section provides in pertinent part:

> The court shall review . . . as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity [and] [o]n review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from suit.

28 U.S.C. § 1915(A)(a) and (b).

And under 28 U.S.C. § 1915(e), a district court may also summarily dismiss a complaint filed *in forma pauperis* if it concludes the action is: (1) frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To state a claim upon which relief may be granted, a plaintiff must "plead enough facts to state a claim to relief that is plausible on its face[,]" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must plead those facts with enough specificity "to raise a right to relief above the speculative level[.]" *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

And "[a]lthough pleadings filed *pro se* are generally held to less stringent standards than those drafted by lawyers, *pro se* litigants must still reasonably comply with procedural rules." *Miller v. Lowe's Home Ctrs. Inc.*, 184 F. App'x 386, 389 (5th Cir. 2006) (per curiam) (citing *Grant v. Cuellar*, 59 F.3d 523, 524-25 (5th Cir. 1995)).

## Analysis

A. Boyd's claims for injunctive relief are not moot or barred by sovereign immunity.

Boyd asks the Court to "award approval of visitation rights between Plaintiff and his daughter; re-instate all e-mail, phone, and mail privileges; [and to] pay all court fees upon favorable judgment." ECF No. 8 at 6. Since filing his amended complaint, however, his visitation rights and e-mail privileges have been restored. ECF No. 12 at 3, 5.[3] Because it appears that the defendants have voluntarily stopped at least some of the conduct that spawned this lawsuit, and because Boyd is suing federal officials for injunctive relief (presumably in their official capacities), the Court must address two preliminary issues: mootness and sovereign immunity.

---

[3] Boyd's answers to the MJQ constitute amendments to his complaint. *See Macia v. Raul A. (Unknown), Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

Although the defendants have apparently restored Boyd's daughter to his visitation list and now allow him to e-mail her, this does not necessarily moot any of his claims. *See*, *e.g.*, *Los Angeles County v. Davis*, 440 U.S. 625, 631 (1979) (finding that, generally, the voluntary cessation of allegedly illegal conduct does not make a case moot) (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)). Voluntary cessation may render a case moot, however, "if subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur." *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 189-90 (2000).

On the face of Boyd's pleadings, it is not "absolutely clear" that Boyd's visitation rights and communication privileges with his daughter will not be hindered in the future. *Id.* Thus, the Court assumes for screening purposes that Boyd's requests for injunctive relief are not moot.

Another preliminary issue is sovereign immunity. Presumably, Boyd seeks injunctive relief against the defendants in their official capacities. Claims asserted against BOP officials or employees in their official capacities are actually against the United States. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dept of Social Services*, 436 U.S. 658, 690, n.55 (1981)). Under the doctrine of sovereign immunity, the United States of America is immune from suit except to the extent

that immunity has been expressly waived by statute. *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981).

But sovereign immunity does not always bar claims for injunctive relief against federal officers. *See*, *e.g.*, *Anibowei v. Sessions*, 2018 WL 1477242, at *1 (N.D. Tex. Mar. 27, 2018). Instead, "[a]n individual can bring such a suit directly against a federal officer in two circumstances: (1) when the officer acts outside of his or her delegated statutory power; and (2) if the officer's conduct, while statutorily authorized, offends a provision of the Constitution." *Id.* (citing *Larson v. Domestic & Foreign Exchange Corp.*, 337 U.S. 682, 689-91 (1949); *Bell v. Hood*, 327 U.S. 678, 684 (1946) ("[It is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution[.]")). The latter is a "constitutional exception to the doctrine of sovereign immunity." *Larson*, 337 U.S. at 696; Richard H. Fallon, Jr. et al., HART AND WECHSLER'S THE FEDERAL COURTS AND THE FEDERAL SYSTEM 895 (7th ed. 2015) ("[I]f the officer acted within the conferred statutory limits of the office, but his or her conduct allegedly offended a provision of the Constitution, then sovereign immunity will be lifted.") (internal quotation marks and citations omitted). "Through this line of cases, individuals have 'a right to sue directly under the [C]onstitution to enjoin . . . federal officials from violating [their] constitutional rights.'" *Anibowei*, 2018 WL 1477242, at *2 (quoting *Porter v. Califano*, 592 F.2d 770, 781 (5th Cir. 1979)); *see also* *Unimex, Inc. v. U.S. Dep't of Hous. & Urban Dev.*, 594 F.2d 1060, 1061-62 (5th Cir. 1979) (per curiam) (examining whether

official capacity suit against federal officers may survive under constitutional exception to sovereign immunity); *Rhode Island Dep't of Envt. Mgmt. v. United States*, 304 F.3d 31, 41 (1st Cir. 2002) ("[O]ur courts have long recognized that federal officers may be sued in their official capacity for prospective injunctive relief to prevent ongoing or future infringement of federal rights."); Erwin Chemerinski, FEDERAL JURISDICTION § 9.2.2, at 676 (7th ed. 2016) ("[U]nconstitutional government actions can be halted by seeking an injunction against the individual officer responsible for executing the government's policy.").

Because Boyd's claims for injunctive relief stem from allegations that the defendants violated the constitution, sovereign immunity does not bar them. *See Anibowei*, 2018 WL 1477242, at *2.

B.  Boyd is not entitled to injunctive relief.

To obtain injunctive relief, Boyd must demonstrate the following elements: "(1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest." *Jackson Women's Health Org. v. Currier*, 760 F.3d 448, 452 (5th Cir. 2014) (quoting *Hoover v. Morales*, 164 F.3d 221, 224 (5th Cir. 1998)). Issuance of an injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion" as to each of the four factors. *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989). And in the

prison setting, requests for injunctive relief are "viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)). "Except in extreme circumstances," the "federal courts are reluctant to interfere" with matters of prison administration and management of inmates. *Young v. Wainwright*, 449 F.2d 338, 339 (5th Cir. 1971).

To the extent that Boyd still seeks an order commanding the defendants to restore his visitation rights and e-mail privileges with his daughter, Boyd has not shown a substantial threat of irreparable injury. To satisfy the irreparable harm requirement, there must be "a significant threat of injury from the impending action," the injury must be "imminent," and "money damages [can]not fully repair the harm." *Humana Inc. v. Jacobson*, 804 F.2d 1390, 1394 (5th Cir. 1986). The plaintiff must further demonstrate that irreparable harm is not merely possible, but "likely." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 21-22 (2008). "Speculative injury is not sufficient; there must be more than an unfounded fear on the part of the applicant." *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985).

Boyd admits that he can now visit with his daughter and e-mail her, and there is no indication from his pleadings that the defendants might revoke those abilities later. "And while '[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its jurisdiction to

11

consider the legality of the practice,' it is an important factor 'bearing upon whether a court should exercise its power to enjoin the defendant from renewing the practice.'" *City of Austin v. Kinder Morgan Texas Pipeline, LLC*, 447 F.Supp.3d 558, 569-570 (W.D. Tex. 2020) (quoting *Friends of the Earth*, 528 U.S. at 193). Here, Boyd has not alleged anything showing that irreparable harm in relation to visitation and e-mail communication with his daughter is possible, must less likely. If he still seeks injunctive relief on those issues, the request should be denied.

As for the other aspects of the claim for injunctive relief—the revocation of telephone and traditional mail privileges—limitations on these forms of communication are apparently still in effect. But Boyd has not shown a substantial likelihood of success on the merits in relation to them.

It is true that the right of free speech applies within prison walls. *See*, *e.g*., *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989) (citing *Turner v. Safley*, 482 U.S. 78, 84 (1987)). And, generally, prisoners enjoy a First Amendment right to communicate with family and friends. *See, e.g*., *Heyer v. United States Bureau of Prisons*, 849 F.3d 202, 213 (4th Cir. 2017); *Yang v. Missouri Dep't of Corr.*, 833 F.3d 890, 894 (8th Cir. 2016) (The rights retained by a convicted prisoner "include the right to communicate with persons outside the prison walls, subject to regulation that protects legitimate governmental interests"); *Pope v. Hightower*, 101 F.3d 1382, 1385 (11th Cir. 1996) (concluding that convicted prisoners retain a "First Amendment right to communicate with family and friends"); *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) (recognizing that "persons incarcerated

in penal institutions retain their First Amendment rights to communicate with family and friends"); *Morgan v. LaVallee*, 526 F.2d 221, 225 (2d Cir. 1975) ("A prison inmate's rights to communicate with family and friends are essentially First Amendment rights subject to § 1983 protection...").

Thus, when communication is restricted, any such regulation must be reasonably related to legitimate penological interests. *See Turner*, 482 U.S. at 89.

Here, though, Boyd admits that he can communicate with his daughter by e-mail. ECF No. 12 at 5, 7. Courts have held that a prisoner-plaintiff fails to state a First Amendment claim when a prison prevents one method of communication with family and friends, but other means of communication are available. *See*, *e.g.*, *Solan v. Zickefoose*, 530 F. App'x 109, 111 (3d Cir. 2013) (denying First Amendment claim and noting in part that despite limits on prisoner's use of e-mail to communicate with those outside prison, prisoner failed to state First Amendment claim when he could communicate with them by other means); *Almahdi v. Ashcroft*, 310 F. App'x 519, 521 (3d Cir. 2009) (holding telephone use restriction did not violate First Amendment and noting in part that there was no evidence that prisoner lacked other means of communication with people outside of prison); *Castille v. Blanco*, 2007 WL 2264285 (E.D. La. Aug. 1, 2007) (finding no violation resulting from restrictions upon use of the telephones, "especially where adequate alternative means of communication, such [as] access to the mail, [was] available"). To the extent that this aspect of Boyd's request for injunctive

relief is premised on the First Amendment, he fails to show a substantial likelihood of success on the merits.

Boyd also references the Fifth and Eighth Amendments. *See*, *e.g*., ECF No. 12 at 10-16. It is unclear whether he invokes those amendment in support of his apparent claims for injunctive relief or merely in relation to the individual-capacity *Bivens* claims addressed below. If Boyd seeks injunctive relief for continued violations of those amendments, he fails to show a substantial likelihood of success on the merits.

As for a Fifth Amendment due process claim, to determine what process is due, the Court addresses two inquiries: "(1) whether there exists a liberty . . . interest which has been interfered with by the State and (2) whether the procedure attendant upon that deprivation were constitutionally sufficient." *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 228-29 (5th Cir. 2020) (citation omitted). Generally, a prisoner has a protected liberty interest in communication by mail. *See, e.g*., *McKenzie v. Fabian*, 2009 WL 2982641, at *15 (D. Minn. Sept. 11, 2009) ("Prisoners have a protected liberty interest in communication by mail and their due process rights are implicated where they do not receive notice that their mail has been rejected.") (citing *Bonner v. Outlaw*, 552 F.3d 673, 676 (8th Cir. 2009)).[4]

---

[4] Prisoners do not, however, have a liberty interest in telephone use. *See*, *e.g*., *Hester v. Mamukuyomi*, 750 F. App'x 275, 276-77 (5th Cir. 2018); *see also Lewis v. Dretke*, 54 F. App'x 795 (5th Cir. 2002) (finding that no liberty interest was implicated when the prisoner's telephone privileges were suspended for 90 days). So, any due process claim that Boyd is making in relation to the revocation of telephone privileges is meritless and does not warrant injunctive relief.

And the Court assumes without deciding that that a liberty interest is implicated here, even though there is no indication that Boyd is unable to receive or issue mail generally.

The second inquiry, determining what process is due, requires the Court to look to the framework established in *Mathews v. Eldridge*, 424 U.S. 319 (1976), which "requires consideration of three distinct factors," namely (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Austin*, 545 U.S. at 224-25 (quoting *Eldridge*, 424 U.S. at 335).

Boyd does not describe the procedures used or allege that there were no procedures used. More fundamentally, he has not alleged that he was deprived of notice and an opportunity to be heard in relation to the revocation of traditional mail privileges with his daughter. Thus, he has not shown a likelihood of success on the merit of this claim.

The same is true of any claim under the Eighth Amendment. The "use of a phone in prison is a privilege, and the withdrawal of [this privilege] is not an atypical, significant deprivation that might rise to the level of a constitutional concern." *LaVargne v. McDonald*, 2020 WL 7090064, at *11 (M.D. La. Nov. 23, 2020), *rec. accepted* 2020 WL 7081598 (M.D. La. Dec. 3, 2020). As for the

traditional mail, as noted, Boyd could communicate with his daughter by e-mail, and there are no allegations that this is not an adequate substitute.

And finally, even if Boyd could show a substantial likelihood of success on the merits of his apparent claim that the defendants revoked his right to correspond by traditional mail and telephone with his daughter—whether premised on the First, Fifth, or Eighth Amendment—he has not shown a substantial threat of irreparable harm because alternative means of communication exist, namely, e-mail. *See*, *e.g.*, *Paulino v. Menifee*, 2001 WL 243207, at *2 (S.D.N.Y. Mar. 9, 2001) ("Petitioner also argues for reinstatement of his telephone privileges so that he can contact his children who reside in the Dominican Republic. However, Petitioner has alternative means of communication available to him—such as letter writing and sending messages through other visiting family members—that militate against imposing interim injunctive relief.") (citing *Pitsley v. Ricks*, 2000 WL 362023, at *5 (N.D.N.Y. Mar. 31, 2000) (dismissing prisoner's section 1983 suit alleging improper denial of telephone access where inmate had alternative means of communication with the outside world by mail); *Acosta v. Bradley*, 1999 WL 158471, at *7 (E.D. Pa. Mar. 22, 1999) (same); *Arbitron Corp. v. Phoenix Broadcasting Corp.*, 1997 WL 452020, at *5 (S.D.N.Y. Aug. 6, 1997) (declining to issue preliminary injunction where movant offered no explanation why alternatives would not ameliorate or eliminate the irreparable harm)).

For these reasons, Boyd has not shown that he is entitled to injunctive relief, and his claims seeking it should be dismissed.[5]

C. To the extent that Boyd seeks monetary damages against the defendants in their individual capacities, his claims are not cognizable under the PLRA or *Bivens*.

Boyd appears to seek monetary damages against the defendants for causing him emotional and financial distress resulting from the revocation of his visitation rights and communication privileges with his daughter. *See* ECF No. 12 at 12-16. He also claims that the defendants revoked his communication privileges with his daughter in retaliation for filing this lawsuit. ECF No. 12 at 8-9. The Court assumes that these claims are against the defendants in their individual capacities because they would be barred by sovereign immunity otherwise. *See*, *e.g.*, *Lineberry v. Lappin*, 2007 WL 891237, at *2 (N.D. Tex. Mar. 22, 2007). These claims for monetary damages fail for multiple reasons.

i. *Physical Injury Requirement*

As part of the Prison Litigation Reform Act (PLRA), Congress placed a restriction on a prisoner's ability to recover compensatory damages without a

---

[5] Boyd originally named the BOP as a defendant pursuant to the Administrative Procedure Act (APA) 5 U.S.C. § 702-706. *See* ECF No. 3 at 1. But he did not name the BOP in his amended complaint, and "[a]n amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (per curiam) (citation omitted). Because the amended complaint does not adopt or incorporate the original complaint by reference, it supersedes it, and because the BOP is not a defendant in the amended complaint, the Court does not analyze Boyd's APA claim against it.

showing of physical injury: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury . . . ." 42 U.S.C. § 1997e(e). The Court construes Boyd's pleadings as alleging violations of his rights under the First, Fifth, and Eighth Amendments.

The physical injury requirement has been recognized as applying to claims under all those amendments. *See, e.g.*, *Herman v. Holiday*, 238 F.3d 660, 665-66 (5th Cir. 2001) (Eighth Amendment); *Geiger v. Jowers*, 404 F.3d 371, 375 (5th Cir. 2005) (First Amendment*); Schaller v. United States*, 2011 WL 7052267, at *4 (N.D. Fla. Dec. 29, 2011), *rec. accepted*, 2012 WL 136007 (Jan. 17, 2012) (Fifth Amendment).

Boyd has not alleged any physical injury here. He mentions only court costs and "emotion [sic] and financial stress brought on to my daughter and I [sic]." ECF No. 12 at 10-16. Thus, the PLRA's physical injury requirement bars any request for compensatory damages.

ii.    *Bivens*

Because the defendants are federal officers, any claims that Boyd is making against them in their individual capacities are pursuant to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971). "The Supreme Court has authorized an implied damages remedy against federal officers for constitutional violations (*Bivens* actions) only three times." *Springer v. United States*, 2022 WL 2208516, at *1 (5th Cir. June 21, 2022) (citing *Carlson v. Green*, 446 U.S. 14 (1980) (Eighth

Amendment claim for failure to provide adequate medical assistance to an inmate); *Davis v. Passman*, 442 U.S. 228 (1979) (Fifth Amendment Due Process claim for gender discrimination); *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971) (Fourth Amendment claim for unreasonable search and seizure)); *see also Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854-55 (2017) (discussing *Carlson*, *Davis*, and *Bivens*).

And, the Supreme Court "'has consistently refused to extend *Bivens* [liability] to any new context or new category of defendants . . . for the past 30 years.'" *Abbasi*, 137 S. Ct. at 1857 (quoting *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 68 (2001)). The Supreme Court has instructed that courts shall not extend *Bivens* to a new context if "special factors counsel[] hesitation in the absence of affirmative action by Congress." *Bivens*, 403 U.S. at 396. This "special factors" inquiry must "concentrate on whether the Judiciary is well-suited, absent congressional action or inaction, to consider and weigh the costs and benefits of allowing a damages action to proceed," or whether an "alternative remedial structure" exists. *Abbasi*, 137 S. Ct. at 1857-58.

Applying that analysis here, Boyd's claims arise in a new context for purposes of *Bivens*. None of the *Bivens* trilogy involved a prisoner's right to visitation or communication with family members. The factual scenario here is completely different than what was at issue in *Bivens*, *Davis*, or *Carlson*. This is the case even though Boyd alleges that his claims also arise under the Fifth and Eighth Amendments, which were at issue in *Davis* and *Carlson* respectively. A case

can still present a new context even though it involves the same general amendment at issue in *Bivens*, *Carlson*, or *Davis*. *See*, *e.g.*, *Canada v. United States*, 950 F.3d 299, 307 (5th Cir. 2020) ("Canada contends that the Supreme Court recognized a *Bivens* claim for Fifth Amendment Due Process violations in *Davis*, and thus his claims do not present a new Constitutional context. His reliance on *Davis* is misplaced. The Supreme Court has made clear that claims for violations of Fifth Amendment rights can still be brought in a new context. To be sure, '[n]o one thinks *Davis*—which permitted a congressional employee to sue for unlawful termination in violation of the Due Process Clause—means the entirety of the Fifth Amendment's Due Process Clause is fair game in a *Bivens* action.'") (quoting *Cantú v. Moody*, 933 F.3d 414, 422 (5th Cir. 2019)).

And, to the extent that Boyd is bringing a First Amendment retaliation claim, the Fifth Circuit, in declining to extend *Bivens* to First Amendment retaliation claims, has underscored "the fact that the Supreme Court has not only never recognized a *Bivens* cause of action under the First Amendment, but also once rejected a First Amendment retaliation *Bivens* claim for federal employees." *See Watkins v. Three Admin. Remedy Coordinators of BOP*, 998 F.3d 682, 686 (5th Cir. 2021) (internal citations omitted).

Because Boyd's claims arise in a new context, the Court considers whether special factors counsel against extending *Bivens* to the new context. They do. First, Congress has already legislated extensively with respect to prisoners' rights, and "legislative action suggesting that Congress does not want a damages remedy is

20

itself a factor counseling hesitation." *Abbasi*, 137 S. Ct. at 1865. "Some 15 years after *Carlson* was decided, Congress passed the [PLRA], which made comprehensive changes to the way prisoner abuse claims must be brought in federal court." *Id.* (citing 42 U.S.C. § 1997(e). "So it seems clear that Congress had specific occasion to consider the matter of prisoner abuse and to consider the proper way to remedy those wrongs." *Id.* "*Abbasi* makes clear that Congress could have extended the *Carlson* damages remedy to cases involving other types of prisoner mistreatment but chose not to." *Dudley v. United States*, 2020 WL 532338, at *7 (N.D. Tex. Feb. 3, 2020).

Courts considering the extension of *Bivens* to new areas in the prison context have also noted that the "administration of the federal prison system" is a special factor counseling hesitation against such expansion. *Nabaya v. Bureau of Prisons*, 2020 WL 7029909, at *5 (N.D. Tex. Oct. 7, 2020), *rec. accepted*, 2020 WL 7027470 (N.D. Tex. Nov. 30, 2020); *see also Petzold v. Rostollan*, 946 F.3d 242, 248 n.2 (5th Cir. 2019) ("[W]e are unlikely to imply a *Bivens* remedy for this new context as 'special factors' counsel hesitation in federal prison administration.") (citing Abbasi, 137 S. Ct. at 1857-58); *Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020) ("'[L]egislative action suggesting that Congress does not want a damages remedy' counsels against judicial do-it-yourself projects. Congress paid close attention to inmate constitutional claims when it enacted the [PLRA]. The Act 'does not provide for a standalone damages remedy against federal jailers.'") (quoting *Abbasi*, 137 S. Ct. at 1865) (citations omitted).

Additionally, an alternative remedial process exists for Boyd, i.e., the Federal Bureau of Prisons' Administrative Remedy Program. "Under this program, prisoners can file grievances about any aspect of their confinement, the agency must provide written responses in specified time frames, and prisoners may appeal institutional-level responses to the agency's regional and central offices." *Dudley,* 2020 WL 532338, at *8 (citing 28 C.F.R. §§ 542.10-19 (2017)). Since *Abbasi,* numerous courts have recognized the Federal Bureau of Prisons' Administrative Remedy Program as an alternative process and a special factor that forecloses expansion of the *Bivens* remedy. *See, e.g., Sheldon v. Underwood,* 2022 WL 1651463, at *6 (N.D. Tex. Apr. 29, 2022), *rec. accepted* 2022 WL 1644443 (N.D. Tex. May 24, 2022).

Because Boyd's *Bivens* claims involve a new context under *Abbasi,* and because special factors exist counseling against the extension of *Bivens* to them, his claims should be dismissed with prejudice.[6]

### Leave to Amend

The Fifth Circuit is inclined to give *pro se* plaintiffs several opportunities to state a claim upon which relief can be granted. *See Scott v. Brynes,* No. 3:07-CV-1975-D, 2008 WL 398314, at *1 (N.D. Tex. Feb. 13, 2008); *Sims v. Tester,* No. 3:00-CV-0863-D, 2001 WL 627600, at *2 (N.D. Tex. Feb. 13, 2001). Courts

---

[6] Boyd also seeks court costs. *See, e.g.,* ECF No. 12 at 10. Federal Rule of Civil Procedure 54(d)(1) permits the Court to award costs other than attorney's fees to the "prevailing party." Assuming the Court accepts this recommendation, Boyd is not a prevailing party, so he may not obtain court costs.

therefore typically allow *pro se* plaintiffs an opportunity to amend their complaints when the action is to be dismissed pursuant to a court order. *See Robinette v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, No. 3:96-CV-2923-D, 2004 WL 789870, at *2 (N.D. Tex. Apr. 12, 2004); *Sims*, 2001 WL 627600, at *2. But "granting leave to amend is not required if the plaintiff has already pleaded his 'best case.'" *Bryant v. Wells Fargo Bank*, 2018 WL 4290791, at *4 (N.D. Tex. Aug. 23, 2018) (citing *Wiggins v. La. State Univ.—Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017), *rec. accepted* 2018 WL 4283556 (N.D. Tex. Sept. 7, 2018).

Here, Boyd has submitted two complaints and responded to a magistrate judge questionnaire to further clarify his claims. A verified questionnaire response allows a plaintiff to plead his or her best case and is a valid way for a *pro se* litigant to amend his complaint. *See Nixon v. Abbott*, 589 F. App'x 279 (5th Cir. 2015) (per curiam). Because Boyd has responded to a questionnaire, he has pleaded his "best case" and further leave to amend is not warranted.

## Conclusion

Pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(b), the Court should dismiss Boyd's claims **WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

SO RECOMMENDED.

August 8, 2022.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

23

INSTRUCTIONS FOR SERVICE AND
NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).